(No. 17909.—)

LESLIE A. NEEDHAM, Appellee, *vs.* THE VILLAGE OF WINTHROP HARBOR *et al.* Appellants.

*Opinion filed October 25, 1928.*

524

RUNYARD & BEHANNA, for appellants.

LESLIE A. NEEDHAM, *pro se,* (ELAM L. CLARKE, of counsel.)

Mr. COMMISSIONER PARTLOW reported this opinion:

On October 3, 1925, appellee, Leslie A. Needham, filed his bill in the circuit court of Lake county against appellants, the village of Winthrop Harbor and the members of its board of trustees, for an injunction and to establish and quiet title to a certain strip of land claimed by appellants as a street or highway. There was a hearing before the chancellor upon bill and answer, a decree was entered as prayed, and an appeal has been prosecuted to this court.

In 1922 appellee became the owner of 400 acres of land in the northeast corner of the State of Illinois and within the limits of the village of Winthrop Harbor, being partly in section 11, township 46 north, range 12, in Lake county. The land had a frontage of 8000 feet on Lake Michigan and about 1000 feet upon the Illinois-Wisconsin State line. Appellee subdivided the north half of this land and called it Oakshore subdivision. This subdivision had a frontage of about 1000 feet east and west on the Illinois-Wisconsin

State line and about 4000 feet north and south on Lake Michigan. At the south end the subdivision was almost 2000 feet wide east and west. The west boundary of the subdivision, except at its southwest corner, was the west line of section 11. Extending in a northwesterly and southeasterly direction through the plat, 350 to 400 feet west of Lake Michigan and parallel with it, was a driveway about 80 feet wide, known as Oakshore drive. Between this driveway and Lake Michigan were lots from 350 to 400 feet long east and west, together with a private parkway and beach. Lot 52 was the south lot in this section and was bounded on the west by Oakshore drive and on the east by the lake. It was about 375 feet wide east and west and about 1400 feet long. This lot extended to the south end of the plat and no street, alley or passageway crossed it at the south end. A part of the strip of land in question was 90 feet wide across the south end of lot 52, together with a strip 10 feet wide lying immediately south of the south line of this lot, appellants claiming a road in this 100 feet by prescription. Lot 51 was immediately west of lot 52, with Oakshore drive separating them. On the south side of lot 51 was an east and west street or roadway about 1500 feet long, designated as Main street, which marked a part of the south boundary of the plat. It extended east from the southwest corner of the plat and connected with Oakshore drive at the southeast corner of lot 51. This street was 80 feet wide for 1008 feet west of the southeast corner of lot 51 and 100 feet wide west from that point. Immediately east of the west line of section 11, on the north side of Main street, was a piece of ground not included in the plat, about 500 feet square, on which was located a factory building known as Austin's plant, or Gordon's Fireworks plant, or the Municipal Engineering Company's plant. The street known as Main street extended west from the southwest corner of the plat half a mile or more until it intersected with Sheridan road, crossing

the tracks of the Chicago and Northwestern Railway Company. Just before the trial of this suit this road was paved west from Gordon's Fireworks plant. The land in controversy is a strip 100 feet wide, commencing at a point 500 feet east of the west line of section 11 and extending east over what is designated on the plat as Main street, and also extending east from the east end of Main street, crossing the south end of lot 52, to the lake.

After appellee had acquired title and after he had laid out his addition he submitted the plat to the village board of Winthrop Harbor. It was approved and accepted on July 27, 1922, and was filed for record in Lake county on August 2, 1922. After the plat was approved appellee graded the street, driveway and parkway shown on the plat, constructed in Main street and Oakshore drive a concrete road about one mile long, graded and landscaped two miles of parkway, planted trees and shrubs, erected on each side of Main street a row of marble columns, constructed an eighteen-hole golf course along the 4000 feet of shore line, and in the spring of 1923 constructed on the south 40 feet of lot 52, being a portion of the land in controversy, a concrete basement and cottage.

The bill alleged the making of the plat, its approval and acceptance by the village board, that it was filed for record, and that the land was improved by appellee. It alleged that among other improvements was the building of a club house near the lake, on the strip of land claimed by the village as a part of Main street extended east across lot 52; that in September, 1925, while appellee was excavating a foundation for a club house at this point, he was served with notice of a resolution by the village board claiming that the public was entitled to an easement or right of way upon Main street continued east across lot 52, including a part of the site of the club house; that after the service of this notice and while the work of preparing a foundation was proceeding the village president ordered the work

stopped and caused the surface of the ground to be restored to its former condition; that an altercation took place between the president and the agents of appellee, and the president either arrested or attempted to arrest one of the agents of appellee and threatened him; that the village and the public had not acquired any right of way, by prescription or otherwise, over the portion of Main street east of Oakshore drive, and such travel as there had been over that land had been permissive and not adverse; that the village and the public were barred from claiming such street by reason of a certain foreclosure proceeding in which the village was a party defendant, served with process and defaulted, which proceeding resulted in a decree of foreclosure, a sheriff's sale on redemption and a deed through which appellee's title was derived; that appellee did not by his plat affirmatively dedicate to the public any portion of Main street and Oakshore drive; that all rights, if any, acquired by the public therein exist solely by virtue of the plat and must arise by some interpretation thereof, but that the plat was tendered as a whole and was to be accepted as tendered; that the claim that the public has an easement by prescription over any portion of lot 52 is inconsistent with and in repudiation of the offer to dedicate by appellee and the acceptance thereof; that by reason of the forcible trespasses by appellants, appellee elected to, and did, withdraw his offer to dedicate to the public any portion of Oakshore drive or Main street. The bill prayed for an injunction restraining appellants from interfering with appellee in the development of the land and the building of the club house; that a decree be entered finding that the village and the public had no right of way, by prescription or user, in Main street; that appellee had withdrawn the offer of dedication to that portion of Main street from a point 500 feet east of the west line of section 11 to its intersection with Oakshore drive, and that the public had no right of travel thereon.

Appellants in their answer alleged that the plat was correct; that on September 16, 1925, a notice of claim of easement was served on appellee; that the village president ordered appellee and his agents to cease from interfering with said strip; alleged that the public had a right of way over Main street across lot 52 to the lake, and, as officers of the village, appellants proposed to protect the rights of the public to travel thereon; denied that any of the acts of the village by its officers, or by any of its proceedings, estopped or barred the public of its right of travel; alleged that Main street from Sheridan road east to the lake was 100 feet wide and had been open and used by the public for continuous travel for forty years; that the strip east of the Gordon plant had been so traveled for twenty years continuously; that the portion east of a point 500 feet east of the west line of section 11 had been traveled for thirty years by the public, it connected with Sheridan road and extended to Lake Michigan, and for such period the public had used the same openly, notoriously and uninterruptedly as a highway under claim of right, with notice to appellee and to his predecessors in title; that appellants had expended money on that part of Main street within the plat since the approval of the plat, and whatever buildings and improvements were placed on the land by appellee were placed there with full knowledge of said easement, and appellee was so informed at the time the plat was offered and approved; denied that appellee had withdrawn the dedication of that portion of Main street included in the plat but alleged that the dedication had been accepted and the rights of the public established therein; averred that only that portion of Main street across lot 52 had ever been in controversy prior to the filing of the bill; that the portion of Main street within the plat had not been in dispute and there were no acts of trespass complained of with reference to it.

After appellants' answer was filed, appellee amended his bill by alleging that the claim of appellants that they had acquired a prescriptive easement over Main street from the Northwestern railroad tracks east to the lake was false; that the Winthrop Harbor and Dock Company on April 8, 1902, executed a deed to the village for a 100-foot strip from the railroad tracks east to a point 500 feet east of the west line of section 11, and the village accepted the deed by ordinance and is estopped to maintain a right of way by prescription over that part of Main street; that after the sheriff's deed of October 13, 1904, had been issued under the foreclosure proceedings the municipality adopted an ordinance, which remains in full force and effect, directing the institution of proceedings in the county court for the condemnation of that portion of Main street in controversy; that proceedings to condemn were instituted and are still pending, and appellants are estopped thereby from claiming the land by prescription.

Appellants contend that the only issue rightly involved in this case is the right of easement by prescription over the south end of lot 52; that the decree should be reversed for the reason that the bill was filed for the purpose of quieting title in an easement, and that there has been no adjudication of the legal title at law; that a court of equity will only remove such clouds upon title as appear upon the record and cast doubt upon the validity of a record title; that a right of way by prescription does not constitute a cloud upon the title, therefore the court had no jurisdiction over the subject matter.

If the bill had been filed for the sole purpose of removing a prescriptive right as a cloud upon the title there might be merit in this contention of appellants. (*Allott* v. *American Strawboard Co.* 237 Ill. 55; *Roby* v. *South Park Comrs.* 215 id. 200.) The bill, however, was not filed solely for that purpose. Appellee was the owner of the fee and was in possession. He acquired title from certain

grantors whose title arose by virtue of a foreclosure proceeding in a court of competent jurisdiction in which the village was a party and made default. The village passed a resolution declaring that it had a right of way across appellee's land and ordered him and his agents not to interfere with such right. The village authorities with force and arms invaded the premises, assaulted and threatened some of appellee's men, required them to cease work, tore down signs and destroyed some of the work which had already been done. This was an invasion of the rights of appellee and he had a right to the protection of a court of equity. Where a municipality undertakes to take possession of a street to which it has no right the proper remedy is by injunction. (*Rose* v. *Village of Elizabethtown,* 275 Ill. 167; *Waller* v. *Village of River Forest,* 259 id. 223; *Lowery* v. *City of Pekin,* 186 id. 387.) The bill also alleged that the resolution was a cloud on the title and that there was an irreparable injury. When equity assumes jurisdiction for one purpose it will assume jurisdiction for all purposes. The court had jurisdiction of the person of appellants and of the subject matter of the suit, and the decree cannot be reversed for want of jurisdiction of the subject matter.

The test in determining whether a road has become a highway by prescription is whether or not the public generally had the free and unrestricted right in common to use the road. Where it is shown to have been openly and notoriously used as an open highway in common by all of the people for the statutory period it will be considered a public highway. (*Lee* v. *Dickman,* 316 Ill. 529; *Phillips* v. *Leininger,* 280 id. 132.) The test is not the number of persons actually using the road, but whether or not the public generally had the free and unrestricted right to use it. (*Mudge* v. *Wagoner,* 320 Ill. 357.) The public use for the statutory period, unexplained, will raise the presumption that it was used adversely. (*Wiehe* v. *Pein,* 281

Ill. 130.) Where such use is shown, the burden is on the one denying the existence of a public highway to show that the use was under some license or indulgence inconsistent with the claim of the right of the public. (*Law* v. *Neola Elevator Co.* 281 Ill. 143; *Thorworth* v. *Sheets,* 269 id. 573.) It is not necessary, in order to establish a public highway by user, that all vehicles that traverse it shall follow exactly the same route. If the user is over substantially the same strip, changes in the wheel ruts, necessitated by conditions of the road or occasioned by meeting other vehicles, do not constitute a change of the location of the road. *Mudge* v. *Wagoner, supra; Wiehe* v. *Pein, supra.*

The evidence shows that in 1893 William Knight, who owned this land, sold it to the Winthrop Land Association, and from 1893 to 1896 he was employed by the land association as its manager. He had all fences removed east of the Chicago and Northwestern railroad tracks. Certain streets were laid out, including Main street from Sheridan road east to the railroad tracks. The village was incorporated in 1901, and the Winthrop Harbor and Dock Company, which was the successor to the land company, conveyed to the village a strip of land, being that part of Main street east from the railroad tracks to a point 500 feet east of the west line of section 11 and extending to the Gordon plant, at the southwest corner of the subdivision in question. There is no question about Main street being a public street from Sheridan road to the Gordon plant, but it is not a public street east of that point to the lake unless it be by prescription or by virtue of the plat dedicating 1008 feet due east of the Gordon plant. Appellee testified that he was the village attorney of Winthrop Harbor from 1905 to 1917 and first became acquainted with this land in May, 1905. He testified that at that time there was a fence on the west line of section 11, extending south to the center of Main street and east in the center of Main street 500 feet. From this point east to what is now Oakshore drive

there was an old ditch. In 1905 "No trespass" signs and "Private property" signs were put up at a point 500 feet east of the west line of section 11. They were there in 1905 and remained a number of years, probably until 1918. The Municipal Engineering Company occupied the factory building at the northeast corner of Main street with its intersection with the west line of section 11, from 1914 to 1918. It excavated a ditch from a point about 250 feet north of the intersection of Main street and east of a line 500 feet east of the west line of section 11, running in a southwesterly direction to a point in the middle of Main street 500 feet distant, and a bridge was put over the ditch. The company tore out the posts in the middle of Main street. A gate was put in a fence on the north half of Main street, about 500 feet east of the west line of section 11. The bridge was used when gravel was hauled from the lake. Nineteen witnesses were called by appellants to establish their claim of a right of way by prescription. Nine of these witnesses testified that they had hauled gravel over the strip across lot 52. Six of them were employed by the owners of the soil and they used the land by express permission of the owner. Five of them testified that the travel east to the lake was varied and promiscuous and not in any definite course. Four testified that they saw gates, fences and obstructions along the line at various places and at various times. Four saw warning signs posted along the way. Seven witnesses testified for appellee, three of whom testified that the travel was not in a beaten path. All of them testified to seeing signs, gates and fences. W. C. Heinroth testified that in 1908 he put a fence and gates across Main street just east of the Gordon plant and put up a sign, "Private property—No trespass;" that the factory men knocked down the fence and gates several times and that he replaced them. Hunters shot at the signs, but they remained up several years, filled with shot. He put padlocks on the gates and they were torn off half a dozen

times. About 1914 the Austin plant wanted to get gravel from the lake and asked permission to go through these gates and over this land. Permission was given and the company agreed to take care of the gates after that time. In October, 1904, the village adopted an ordinance for the condemnation of a street through the land conveyed by the dock company to the village in 1902, title to which had been divested by the foreclosure and sale to Potter. Proceedings to condemn were instituted in the county court of Lake county in April, 1905. Between July 13, 1922, and September 19, 1925, the board of trustees and the board of local improvements of the village passed various resolutions relative to inducing appellee to donate or dedicate the strip of land in question across lot 52 as a public road and took steps towards the condemnation of the same. Proceedings were under contemplation during this time by the village to pave Main street from the railroad track east to appellee's subdivision, and a motion was adopted by the village board to keep the resolution on file until such time as the extension of Main street to Lake Michigan was granted.

This court would not be justified in setting aside the decree on the ground that the evidence sustains the contention of appellants that a prescriptive right existed unless the finding of the decree to the contrary is manifestly against the weight of the evidence. (*Schrader* v. *Schrader,* 298 Ill. 469; *Cook* v. *Wolf,* 296 id. 27.) It is only where the preponderance of the evidence shows that the road has been openly and notoriously used as an open and public highway in common by the general public for the statutory period that such a road will be considered as a public highway by prescription. The evidence fails to show such a state of facts. Many persons traveled from the east end of Main street to the lake, but it is very doubtful whether such travel was confined to the strip in controversy. There were several tracks, any one of which might have been used. In order to establish a prescriptive right the travel must be

over substantially the same strip. It is also apparent that a great deal of this travel was by express permission of the owners, which would not establish a prescriptive right. Some of it was in open violation of the rights of the owners, who put up signs, fences, gates and padlocks to prevent travel. It is also apparent that the municipality by its resolutions and ordinances, as late as 1922, did not claim that any such prescriptive right existed but it took steps at various times to obtain a right of way east to the lake from the owner of the fee. Under the facts in evidence we would not be justified in reversing the decree on the ground that the evidence shows a prescriptive right to the road across lot 52.

Appellee insists that the village, under the plat, acquired no title to any part of Main street for the reason that the plat was not a statutory plat because there were no streets, alleys, common or public grounds designated; that no premises are shown to have been intended for streets, alleys or ways, common or public; that there was no designation on the plat indicating an intention on the part of appellee to dedicate anything to the public; that there are no in or out-lots or fractional lots adjacent to the land subdivided.

Section 1 of chapter 109 of our statutes provides the manner in which land may be subdivided. Section 2 provides for the certificate of the surveyor, the acknowledgment by the owner, the approval by the village and the filing of the plat for record. Section 3 provides that when the provisions of sections 1 and 2 have been complied with, such acts shall be held in law and equity to be a conveyance in fee simple of such portions of the premises platted as are marked or noted on such plat as donated or granted to the public. Sections 6 and 7 provide the method of vacating the plat, in whole or in part. The approval of a plat by a village is evidence that the plat complies with the statute. (*People* v. *Massieon,* 279 Ill. 312.) If the plat and certificate are such that a competent surveyor may from the

data given locate the lots, blocks, streets and alleys and determine the dimensions of the same they are sufficient to comply with the statute. *Village of Auburn* v. *Goodwin,* 128 Ill. 57; *Trustees of Schools* v. *Dassow,* 321 id. 346.

For the purposes of this case it will be assumed that the plat conformed to all of the provisions of the statute except as above specified by appellee. Oakshore drive as indicated on the plat extended in a northwesterly and southeasterly direction parallel with Lake Michigan and from 350 to 395 feet west thereof. It is marked as a private driveway north of the south line of lots 24 and 25, which are immediately north of lots 51 and 52 and about 1400 feet north of the north line of Main street. In the center of the private part of Oakshore drive and extending east to the lake is a strip of land 100 feet wide marked private parkway and beach. Opposite this private parkway and beach, on the west side of Oakshore drive, is another strip of land 68.16 feet wide north and south and 274.93 feet east and west marked private drive. There are no alleys indicated on the plat. Each lot, street, driveway, public or private parkway and beach has its specific dimensions marked in feet and inches on the plat. The plat is bounded on the north by the State line, on the east by the lake, on the west by the west line of section 11 and on the south by Main street. There are other specific monuments indicated on the plat, so there can be no question as to the exact land included in the plat and the exact dimensions of everything shown thereon.

The certificate of acknowledgment signed by appellee recites that he is the legal owner of the land and that he has caused the same to be surveyed, subdivided and staked as shown thereon, with a view of having the same recorded as provided by law. It also recites that "Oakshore drive north from the south line extended of lots 24 and 25, and that parcel of land marked and designated as private parkway and beach shown on said plat between said lots 12

and 13, are not hereby dedicated to the public but are hereby reserved and shall forever remain private for the sole and exclusive use and enjoyment in common of the owners and occupants of lots 1 to 48, both inclusive." The certificate of the engineer recited that he had surveyed, subdivided and staked the land described in the caption and shown on the plat and that the plat correctly represented· the survey and subdivision.

In *Village of Lee* v. *Harris,* 206 Ill. 428, the spaces shown upon the plat claimed as streets were named. The spaces claimed as alleys were indicated by strips between the lots in the different blocks. It was held that an intention on the part of the owner to make a dedication to the public by his plat was shown where the spaces upon the plat claimed as streets were given names as such on the plat, and the spaces claimed as alleys appeared on the plat as strips between the lots in the different blocks. In *Clark* v. *McCormick,* 174 Ill. 164, it was held that the intention of the proprietor to dedicate strips as public streets need not be manifested by oral or written declarations but may be established by the survey and plat, if it sufficiently appeared from the face of the plat or in any conceivable way by which such intention might be manifested. In *Seidschlag* v. *Town of Antioch,* 207 Ill. 280, it was held that the law will imply an intention to dedicate land to the public use from any acts of the owner which indicate an intention to so dedicate, and if the apparent dedication is accepted by the public the dedication becomes complete. In *Russell* v. *City of Lincoln,* 200 Ill. 511, it was held that it was not necessary that a declaration, either oral or written, should be established in order to show it was the intention of the proprietor to dedicate the strips to such use. Such intention may be established in any conceivable way by which it may be made manifest. A survey and plat are sufficient to establish a dedication if it appears from the face of the plat that it was the intention of the proprietor to set apart

certain grounds for public use. In *Thompson* v. *Maloney,* 199 Ill. 276, it was held that if lots and blocks are designated on the plat, with spaces left which fairly indicate that they are set apart to the public, the spaces thus indicated are presumptively streets. To the same effect are *Ingraham* v. *Brown,* 231 Ill. 256, and *LaSalle Varnish Co.* v. *Glos,* 254 id. 326.

It is apparent from the plat alone that it was the intention of appellee to dedicate for public use all of Main street within the plat and that part of Oakshore drive south of the south line of lots 24 and 25. Main street is designated as a street without any reservations whatever. Oakshore drive is designated as a drive except that part north of lots 24 and 25, which is designated as private driveway. The parkway, beach and drive, which extend east and west, are designated as private. These descriptions show an intention on the part of appellee to specify what grounds were public and what grounds were intended to be private, and such designation comes within the rules above announced. This intention is more apparent when the plat is considered in connection with the certificate of appellee. In that certificate appellee states that the plat was made with the view of having the same recorded as provided by law, which means that he intended to have the plat made as provided by the statute regulating plats and that it should come within the provisions of that statute and be a statutory plat. The certificate also states that Oakshore drive north of lots 24 and 25 and the parcels of land marked as private parkways and beach are not dedicated to the public. Nothing is said upon the plat or in the certificate about Main street or the rest of Oakshore drive not being dedicated for public use. From this restriction and reservation it would naturally be supposed that all portions of Oakshore drive and all other streets not specifically reserved were dedicated to the public.

Evidence was offered by appellants that after the plat was made the village at its own expense placed tar upon the

concrete pavement on Main street and cut willows along the side of the street. Appellee admits that tar was placed upon the pavement, and he testified that he paid for this work but was not sure whether the village also paid for it. The man who did this work testified that he was paid for the work by the village and no other person paid him. The evidence also shows that after the plat was made the public generally used the paved portion of Main street as a public street. In *Trustees of Schools* v. *Dassow, supra,* it was held that the acceptance of streets by a village may be shown by the affirmative act of taking possession thereof for the purpose of placing water mains or sewers therein or by the general use by the public for a considerable period of time. Where a dedication is very beneficial or greatly convenient or necessary to the public, an acceptance of such dedication may be implied from slight circumstances. In *Rose* v. *Village of Elizabethtown, supra,* it was held that the acceptance may be an express one, evidenced by some formal act by the public authorities, or it may be implied from acts, such as repairing, lighting and assuming control of the land dedicated, or by user by the public for the purposes for which it was dedicated; that where the dedication is very beneficial or greatly convenient or necessary to the public, acceptance will be implied from slight circumstances. From all the facts in evidence it appears that the paved portion of Main street was a public street dedicated to the public use by appellee in his plat and was accepted by appellants and that the public had rights therein.

There is no merit in the contention of appellee that this was not a statutory plat because there were no in or outlots or fractional lots adjacent to the land subdivided. This question was before this court in *Trustees of Schools* v. *Dassow, supra.* After specifying the boundaries of the subdivision in that case, which boundaries are no more specific than they are in the case at bar, this court said: "The location of this addition complies with the statute. The

rule is, that if the plat and certificate of a surveyor are such that a competent surveyor may from the data given locate the lots, blocks, streets and alleys and determine the dimensions of the same they are sufficient to comply with the statute.—*Village of Auburn* v. *Goodwin,* 128 Ill. 57." In the case at bar we find no respect in which the plat of this subdivision did not conform to the statute, therefore it was a statutory plat and was subject to all of the rules of law applicable to such plats.

Appellee insists that he withdrew his plat, in so far as it might be interpreted as an offer to the public, before it was accepted unconditionally by appellants. The plat and its certificate were dated July 27, 1922. The minutes of the village board show that it was approved and accepted on the same day. It was filed for record August 2, 1922. This suit was commenced October 3, 1925. The vacation of plats is regulated by section 6 of the statute. It must be made before the sale of lots, by an instrument in writing approved by the village board in like manner as plats of subdivisions; it must be executed, acknowledged and recorded. Provision is made for vacation where lots have not been sold. There is no evidence in this case that any lots had been sold, and there is no evidence of any compliance with these provisions of the statute or any attempt to comply with them. In.fact, there is no evidence of any act of appellee, of any kind or character, even tending to show a withdrawal of his offer of dedication up to the time the suit was begun, or even thereafter.

It is next insisted that appellants in their answer claimed no right over Main street by a statutory dedication; that they claimed a right by prescription; that they are bound by their pleadings and cannot claim both rights. This contention is based upon a misapprehension as to the pleadings. Appellants sought no affirmative relief. This suit was not commenced by appellants but was begun by appellee. He sought affirmative relief upon the ground that there was no

prescriptive right of way over Main street and that he had withdrawn his offer of dedication in his plat prior to its acceptance. The answer alleged that the village did have a right by prescription over Main street and denied that appellee had withdrawn his plat prior to the time it was accepted. The burden was upon appellee to prove his case as alleged. If he failed to prove his case as alleged he was not entitled to a decree, regardless of the character of the evidence offered by appellants.

The decree was erroneous in restraining appellants from using as a public street the paved part of Main street within the plat. It will be reversed and the cause remanded, with directions to enter a decree limiting the injunction to the strip across the south end of lot 52.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*