JOHN W. CASTLE *et al.*, Plaintiffs-Appellees, *v.* RALPH YENERICH *et al.*, Defendants-Appellants.

Second District    No. 79-801

Opinion filed April 8, 1981.

Rolfe F. Ehrmann, of Dixon, Devine, Ray & Morin, of Dixon, for appellants.

Philip H. Nye, Jr., and William G. Nye, both of Fearer & Nye, of Rochelle, for appellees.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

The defendants appeal from the decision of the circuit court of Lee County denying their claim of an easement by prescription and awarding damages of $5,742 to the plaintiffs for the cost of removing certain alterations to the way in question.

The plaintiffs, John W. and Nancy D. Castle, are the present owners of Tracts A, B and C involved in this dispute. The defendants, Ralph and Unis Yenerich, are the title owners, and James W. and Cheryl S. Lampson are the lessees under a long-term lease from the Yenerichs of the tract known as Tract D. A small sketch may aid in understanding the factual situation involved in this case.

We quote from the findings of the trial court as to the chain of title to these properties:

"3. Tracts C and D were one property until the year 1848 when Ripley conveyed Tract C to William Strader and in 1849 conveyed Tract D to Alexander Beemer.

4. As to Tract C the chain of title is as follows: William Strader conveyed Tract C in the year 1892 to Henry Adrian. In 1928 Henry Adrian then conveyed Tract C to Anna O. Hopwood. Apparently, this particular parcel of real estate remained in the Hopwood Family, according to the testimony of Bernard Hopwood, from 1928 until conveyed by deed dated June 1, 1970 to DeKalb Trust and Savings Bank, an Illinois corporation. The Trust, #595, has as its beneficial owners John W. Castle and Nancy D. Castle.

5. As to Tract D the chain of title is as follows: Alexander Beemer died December 26, 1895. Said tract stayed in the Beemer family, i.e., the heirs of Alexander Beemer and on June 3, 1940 Unis Yenerich acquired an undivided interest in said real estate. The property remained in the ownership of Nolan Beemer, Leda Knetsch, Unis Yenerich and Hilda Tennant until Ralph Yenerich and Unis Yenerich, as husband and wife and as joint tenants, acquired total ownership of the property on September 2, 1964. James Lampson and Cheryl Lampson acquired a 100 year lease of said Tract D on July 25, 1977 from Ralph Yenerich and Unis Yenerich."

Tracts A, B and C were apparently owned by the Hopwood family from 1927 or 1928 until 1969. There is no evidence of the ownership of Tract A from 1969 until September 1974, when Tract A was acquired by the plaintiff, John Castle. Tracts B and C remained in the Hopwood family until June 1970, when they were conveyed to a trust of which John W. and Nancy D. Castle were the beneficial owners.

As is clear from the sketch, there is no ingress to or egress from Tract D, owned by the defendants, except over the land of others. However, there is no evidence of a once common ownership of the various tracts in question and thus there is no basis for any contention of an easement by necessity. The defendants base their defense (and counterclaim for damages to the easement) on the contention that they have an easement by prescription arising from the hostile, uninterrupted, continuous and exclusive use of the way in question under a claim of right for more than 20 years. The plaintiffs, however, deny that the use of the way in question was ever hostile or adverse but contend the path, road or lane—it is variously described in the testimony—by which the defendants traversed Tract A and part of Tract C, was used by permission—not as a matter of right—therefore, it never ripened into an easement.

At the bench trial, the defendants presented the evidence deposition of Ralph and Unis Yenerich, Unis being a descendant of Alexander Beemer who acquired Tract D by conveyance in 1849. They testified that they had used Tract D and had utilized the way in question for the last 55 years. They testified they used it more often when they were young but had continued to use it regularly for recreational purposes, such as hunting, fishing, ice skating and picnics even during recent years. The tract, referred to by a couple of witnesses as being 12 acres in extent, had a pond on it and a small cabin. The Yenerichs testified that there never was any question of having to ask anyone's permission to use the road skirting the edge of Tract A and running across Tract C in order to reach Tract D.

The inference can be made, and was made by the trial judge, from the testimony of both plaintiffs' and defendants' witnesses, that during the time Unis' father, Alexander Beemer, and the Hopwood family owned the respective tracts, the two families were friendly and had a neighborly relationship. This relationship seemingly continued after Unis' father died in 1940, at which time Unis inherited a share of Tract D which she and her husband, Ralph, eventually consolidated in 1964 to acquire the entire ownership of the tract. At that time, she testified, the Yenerichs and their family continued to use the tract as they always had and the easement in question was their way in and out without any objection from the Hopwoods.

There was a great deal of testimony as to the character of the easement. It was generally agreed that it originally had been used for horse and wagon traffic and at one time automobiles had been driven over it, although it was not very suitable for automobiles. However, from time to time, the road would be impassable because of a small drainage ditch across it rising and washing out a culvert across the road. Bernard Hopwood, son of Anna Hopwood, who lived on Tract A in his youth and after his marriage farmed it until 1969, testified that in 1929 Judd Beemer asked his parents for permission to haul cut timber from Tract D out along the easement, which permission was granted by the Hopwoods. Thereafter, he testified, Beemer continued to haul lumber out along the easement until 1934 at which time in the words of Bernard Hopwood "they put a halt to it because it was tearing our road up and that was the end of that, there was no more stuff hauled out of there and after that he [Beemer] couldn't go back in there and haul anything out unless it was fit [evidently meaning not soft or muddy] and he had permission to do it." Bernard Hopwood testified that he observed Beemer and Yenerich on Tract D from time to time but thought they reached it by way of the Johnson farm to the south. Apparently sometime in the 1960's the culvert across the drainage ditch, which bisected the way in question, was washed out and after that a vehicle could not be driven over it. However,

he testified that in 1969, not long after his mother, Anna Hopwood, died, Ralph Yenerich brought some old boxcar doors and had them laid across the culvert and put gravel on them in an attempt to bridge the drainage ditch. As soon as he discovered this, Bernard Hopwood testified he had the bridge torn out and had Ralph Yenerich arrested for trespassing. The charge of trespassing was never pressed and shortly afterward the farm was sold to the plaintiffs or their predecessors in title. From that time until 1977 there was no bridge across the drainage ditch, but in 1977 James Lampson, son-in-law of Ralph Yenerich, repaired the culvert, laid gravel over it and put gravel on the claimed easement in an attempt to reconstitute the original road. George Stowell, a tenant of the Castles, who lived in Tract A from 1974 to 1979, testified he had several confrontations with Ralph Yenerich while he was a tenant on Tract A, in which he indicated to Mr. Yenerich that Yenerich was trespassing on Tracts A, B and C in using the way in question. In 1978, when gravel was being dumped along the easement, Stowell reported this to John Castle, who phoned Mr. Yenerich. Mr. Yenerich refused to stop using the claimed easement and shortly after that this suit was filed by the plaintiffs.

■■ While the evidence established that the way in question, whether described as a road, a lane or a path, had been used by the owners of Tract D as a means of ingress and egress with some regularity and frequency for a period of over 50 years before the present action, the issue to be decided, of course, is whether this use ever ripened into an easement by prescription. It is familiar law that a permissive use can never ripen into a prescriptive right so long as the use is not made under a claim of right, openly hostile to the interests of the record owner. (*Petersen v. Corrubia* (1961), 21 Ill. 2d 525.) However, the *adverse* continued, uninterrupted and exclusive use of a way over another's land under a claim of right for 20 years will establish an easement by prescription on the fiction of a lost grant. In *Petersen*, the court said:

> "Whether there was adverse use of the way under a claim of right for a period of 20 years, or the use of the way is only permissive, is almost wholly a question of fact, (*e.g., Rush v. Collins*, 366 Ill. 307,) and unless the evidence is clearly to the contrary, a court will presume that a parol agreement to impress property with a servitude was made with knowledge of the provisions of the Statute of Frauds, and was therefore intended as a license only and not as an easement or other interest in the land itself. *Boland v. Walters*, 346 Ill. 184." 21 Ill. 2d 525, 532.

In speaking of the burden of proof as to whether a use of the land in question was adverse or with permission, the supreme court said in *Parker v. Rosenberg* (1925), 317 Ill. 511, 518:

> "The law presumes an easement when facts are shown which

admit of such presumption, yet such facts are not presumed but must be established by the greater weight of the evidence. (*Bontz v. Stear*, 285 Ill. 599.) The evidence as a whole does not satisfactorily show that the use of the roadway was enjoyed under such circumstances as to indicate that its use by anyone was adverse or under a claim of right. The testimony is consistent with the permissive use of the roadway."

In commenting on the distinction between a use which is adverse and one which is merely permissive, the court in *Burrows v. Dintlemann* (1976), 41 Ill. App. 3d 83, 85, said:

"Where on the other hand, the use of land is merely permissive from the owner it is not adverse and it cannot ripen into a prescriptive right. [Citations.] *Moreover, evidence of the neighborly relationship between the parties* [citation], or that the land used is vacant, unenclosed and unoccupied may give rise to a rebuttable presumption that the land was used by the permission of the owner." (Emphasis added.)

In the case before us, the trial judge found from the testimony of Ralph Yenerich that Bernard Hopwood did not object to his use of the way "when old Mark was there" (meaning Mark Hopwood) and that Mark did not object, that "he was just like one of the family." From this the trial court evidently concluded that the use of the way in question was founded on a neighborly relationship originally and was, therefore, a permissive use.

Even apart from this implication, however, it is established by the testimony that in 1929 one of the Beemers, many years after the Beemers acquired title to Tract D, thought it necessary to secure permission from the Hopwood family to haul lumber out from Tract D along the way in question. Moreover, in 1969, Bernard Hopwood tore out the bridge which Ralph Yenerich had placed across the drainage ditch and had Yenerich arrested for trespass. While the case was not prosecuted, it does not appear that Yenerich ever took any counter measures to establish his right to use the way or to construct the bridge or otherwise vindicate his claimed right. Litigation did not ensue until 1978, when the plaintiffs began the present suit for trespass and damage to the claimed easement. It appears that so long as the original owners, the Hopwoods and the Beemers, were the parties involved, there was no trouble over a period of 50 years. However, in giving a long-term lease to their daughter and her husband for the nominal sum of $1, the Yenerichs specified they were giving only the rights of ingress and egress which they themselves had and they did not assert or claim a prescriptive easement. The trial court found that in the beginning, that is, "up to the year 1927, the usage of the lane in question was generally by individuals who had no legal interest in the

property and whose use was permissive and predicated upon neighborly courtesy." From 1927 to 1934, the use of the land was also permissive in nature and could not be characterized as an easement for the reason that it was not adverse. From 1934 onward, while Yenerich refused to stop using the way in question, he merely claimed that his use of the claimed easement had not been objected to by the Hopwood family. It will be noted that it was after the death of Anna Hopwood that the hostility between the parties began. In 1969, after Anna Hopwood's death, Yenerich replaced a washed-out bridge over the culvert and Bernard Hopwood tore this out and had Yenerich arrested. From this the trial court concluded that the use of the way in question was not shown to be other than permissive until 1969, when Ralph Yenerich was arrested, and thus the period of adverse use fell short of the required 20 years.

■■ We cannot say that the trial court erred in finding that the defendants had not established a prescriptive right. The burden of proof, as noted above, is on the party claiming the prescriptive right. On the basis of the evidence at hand, the origin of the way not having been established, it is logical to suppose that the use of it developed out of a neighborly relationship and we cannot presume that it arose out of a claim of right. Indeed, there was no evidence at all to suggest that the use was founded on a claim of right adverse to the Hopwoods while Mark and Anna Hopwood lived, which was 20 years before the situation became adverse. The only evidence previous to that is that Judd Beemer did ask permission to haul out lumber along the way in 1929, which he did from 1929 to 1934.

The defendants have not, therefore, established their burden of proof in support of their claim of a prescriptive easement. The judgment of the circuit court of Lee County is affirmed.

Judgment affirmed.

REINHARD and VAN DEUSEN, JJ., concur.