AUGUST J. FELDKER *et al.*, Plaintiffs and Counterdefendants-Appellees, v. RON CROOK, Defendant and Counterplaintiff-Appellant (The County of St. Clair, Defendant).

Fifth District   No. 5—88—0311

Opinion filed February 26, 1991.

Sam S. Pessin, of Pessin, Baird, Belsheim & Wells, of Belleville, for appellant.

No brief filed for appellees.

JUSTICE WELCH delivered the opinion of the court:

The dispute in this case, filed August 21, 1985, involves the existence of a public road alleged by plaintiffs and counterdefendants, August J. Feldker and MidAmerica Trust Co., trustee under trust No. 1417—51—3 (hereinafter Feldker), to be located on real property immediately adjacent to the west of Feldker's property and owned by defendant and counterplaintiff, Ron Crook. This roadway was alleged by Feldker to have been the sole access to his and his predecessors in title's property for 20 years or more. On August 20, 1985, Crook is alleged to have commenced digging up this 300-foot strip of roadway with a backhoe in order to obstruct the orderly flow of traffic to Feldker's premises. Feldker sought a temporary restraining order, preliminary injunction and permanent injunction against Crook from disrupting the orderly flow of traffic along this roadway and from tearing up, damaging, or otherwise doing any work or construction upon the roadway. The circuit court of St. Clair County entered a temporary restraining order without notice on August 21, 1985, against Crook for the relief sought by Feldker.

Feldker's property, which is held in the above-named land trust, is described as lot 24, excepting the east five feet thereof, of Ogle Assessment Plat No. 3, located in the northwest corner of section 12, in Stookey Township. Crook's property is located in the northeast corner of section 11, in Stookey Township, and is immediately adjacent to

Feldker's property to the west. County Highway 84, also known as South 74th Street in Belleville, Illinois, is located to the south of lot 24, and is east-west in course in this area, but bends sharply to the south at the dividing line between sections 11 and 12 until 74th Street meets Illinois Route 15. Feldker contends that the north-south portion of South 74th Street, if extended to the north where the bend in the road occurs, would be the approximate location of the roadway in question.

In his counterclaim, filed September 13, 1985, Crook sought a declaratory judgment as to: the existence of a public road, as a matter of law, along or near the dividing line between sections 11 and 12; whether, if a public road existed, it was located as originally platted, straddling the section 11/12 dividing line such that 20 feet lay to the west of the line and 20 feet lay to the east of the line; and whether a permissive easement for road purposes for the benefit of both parties and at the license and permission of Crook and his predecessors in title existed with regard to the alleged roadway. Crook also sought in his counterclaim an injunction against Feldker: from interfering with Crook's right of free use of the public road as originally platted, lying along the section 11/12 dividing line; restricting Feldker from using Crook's land which lies outside the originally platted road, without Crook's consent; and restricting Feldker from changing the elevation, direction or location of the public road as originally platted.

St. Clair County was joined as a defendant in Feldker's amended complaint, filed March 30, 1987. In the amended complaint Feldker asked the court to find and set the exact position and width of the alleged public roadway. A bench trial was held in the instant case to consider the counterclaim and amended complaint on June 24, 1987. After consideration of the parties' written memoranda of law and the trial evidence, the court entered judgment on July 31, 1987, finding that a public road by prescription was established as early as the 1800's, the centerline of which was located on the section line between sections 11 and 12, township 1 north, range 9 west of the 3rd principal meridian, St. Clair County, Illinois. The court further found that in about 1950 the centerline of the roadway was established along a line parallel to the common section line of sections 11 and 12, but 20 feet west thereof, and that all of the evidence since 1950 was consistent with that conclusion. The court held that a 40-foot-wide roadway exists extending from the northwest corner of lot 24 to the southwest corner of lot 24, the east line of which is the west line of lot 24 and the center line of which is a line parallel to the west line of lot 24 and 20 feet west thereof. Crook filed a post-trial motion which

was denied September 10, 1987. Crook filed a notice of appeal with this court, but said appeal was dismissed on March 14, 1988, for lack of jurisdiction because the order of the court below was not final and appealable.

The court below entered an amended order on May 6, 1988, which disposed of all remaining issues. This order reiterated the court's findings of fact and holding in its order of July 31, 1987, regarding the existence and location of the public road, but also held that because there was no present danger that the orderly flow of traffic along the roadway in question was presently being obstructed or damaged or would be damaged or obstructed in the immediate future, Feldker's request for an injunction was denied. The court also found that the public roadway was not presently a permissive easement at the license or permission of Mr. Crook and/or his predecessor in title and denied the relief sought in Crook's counterclaim. Defendant, Ron Crook, now appeals from the amended order of the circuit court of St. Clair County, entered May 6, 1988. Crook contends on appeal that the judgment was contrary to law with regard to the finding of a public highway by prescription and that the judgment was against the manifest weight of the evidence.

Mr. William Moerchen, a land surveyor for 15 years with Thouvenot, Wade, and Moerchen of Belleville, Illinois, testified on behalf of plaintiff that he had performed a survey on lot 24 of Ogle Assessment Plat No. 3 prior to the improvement of the property with plaintiff's Fairway Condominiums. Moerchen identified plaintiff's exhibit No. 2 as a copy of that survey. On this exhibit Moerchen identified a driveway 40 feet wide lying to the west of plaintiff's condominiums and on a straight line path if 74th Street were extended instead of curving south of plaintiff's property. Moerchen identified some trees located near the section 11/12 dividing line and the driveway and based on their stated width, opined that they could have been at least 30 years old when the survey was prepared. He stated that he used the Ogle's Assessment Plat No. 3, plaintiff's exhibit No. 3, when he prepared this survey. Moerchen testified that there was no right-of-way on lot 24 shown on the assessment plat but that the plat did show the right-of-way line on 74th Street directly south of lot 24. He opined that if 74th Street were extended north at the bend in the road, the right-of-way line would fall to the west of lot 24. Moerchen next identified plaintiff's exhibit No. 4 as a copy of the survey for Country Club Heights subdivision, and that this survey was prepared by the surveying company with which he is employed. He opined that if 74th Street as shown on the survey were extended north, it would

fall to the west of the section 11/12 dividing line and that the entire driveway would be encompassed within that 40-foot-wide roadway.

Moerchen identified plaintiff's exhibit No. 5 as the plat located at page 20 of the Chicago Title Company Atlas, dated August 26, 1951, and used in the period prior to the county survey done by the Sidwell Company. He stated that plaintiff's exhibit No. 5 showed the center line of 74th Street as the section 11/12 dividing line as it traveled north and that the center line jogged at Carr Drive such that the right-of-way is entirely to the west of the section line. He projected the right-of-way north on this exhibit and opined that none of the "extended" 74th Street right-of-way would fall within the confines of lot 24. Moerchen identified plaintiff's exhibit No. 6 as page 22 of Chicago Title's atlas, the survey for the Dorchester Village subdivision which is located to the east of 74th Street. He opined that this survey also showed the extension of 74th Street as being located entirely outside of lot 24.

Moerchen next identified the Press Company Atlas, dated 1976, and plaintiff's exhibit No. 7 as page 23 from that atlas showing the historic plat of Stookey Township and part of the City of Belleville. This plat showed that Country Club Heights was originally part of a 155-acre farm and showed the location of a road along the section 11/12 dividing line. He stated that the east line of the roadway was shown as the section line. Page 213 of the Press Company Atlas was identified as plaintiff's exhibit 8 and showed the Ogle Place Assessment Plat No. 3. Moerchen stated that if 74th Street as shown on this plat were projected to the north, it would lie entirely off lot 24. Plaintiff's exhibit No. 9 was identified as page 212 of the Press Company Atlas showing Ogle Place Assessment plat No. 2, which according to Moerchen showed the northwest corner of section 12 as the boundary of the plat for Ogle Place but which was not intended to be a survey of the area. Plaintiff's exhibit No. 10 was identified as the first Ogle Place Assessment Plat. Moerchen stated that it was a survey of the subdivision to the east of Ogle Place as none of the Ogle Place lots had yet been sold but did show the public road extending north along the section 11/12 line as well as curving east as 74th Street is now located. Page 255 of the Press Company Atlas was identified as plaintiff's exhibit No. 11 showing a map of part of Stookey Township and locating a road west of lot 24 which extended north into the Country Club property as St. Andrews Drive. Plaintiff's exhibit No. 13 was identified by Moerchen as a plat recorded in St. Clair County in 1954, showing the relocating and widening of South 74th Street. According to Moerchen, if South 74th Street were extended north, it would lie entirely outside of lot 24.

Moerchen identified plaintiff's exhibit No. 14 as the survey for the improvements to lot 24 which plaintiff incorporated in the property. It showed the distance of the driveway coming in to serve the property. Plaintiff's exhibits 15 and 16 were aerial photographs of lot 24 taken prior to the widening of South 74th Street and showing the house located on the property prior to the condominiums which plaintiff built. These pictures showed the driveway coming in to serve the property and the location of trees and shrubbery. He opined that the survey performed by his firm, plaintiff's exhibit No. 2, was accurate when viewed in conjunction with these photographs and that no part of the roadway fell within lot 24.

Moerchen explained the change in location of a road located on the section line on the early plats to its present location if South 74th Street were extended. He testified that early roads were not well paved, bad spots could occur and the location of the road would shift along passable routes. He stated that with the advent of asphalt or concrete surfacing of roads the routes would become fixed. He testified that since 1950 the location of South 74th Street had been fixed. Moerchen testified on cross-examination that, while some plats he reviewed showed the location of a roadway going up the section dividing line, the roadway shown did not show any dimensions. He admitted, however, that the roadway in question appears to be a private road, servicing only one property, and that there is no county sign designation showing the roadway to be part of 74th Street. He also admitted that there was no vacation recorded for the north part of South 74th Street as shown on the early plats. Moerchen explained, however, that these atlases were unofficial records, drawn from official plats, and that the location of some roads which had no record could be in error because they were based on the person's judgment. On cross-examination, Moerchen also admitted that he had reviewed the plat recorded in 1911 for the E.C. Kramer subdivision (defendant's exhibit No. 1), which is located to the north of lot 24, and that this plat showed St. Andrews Road going south into a road straddling the section 11/12 dividing line.

Don Parker, an employee of the county highway department, testified on behalf of plaintiff that county highway records indicate a right-of-way coming up 74th Street along the west side of the section 11/12 line extending to the four corners between sections 1, 2, 11, and 12, but he could not say exactly where the road was located with regard to the section line. Plaintiff later testified that he received substantially the same opinion in an April 1986 letter from the St. Clair County superintendent of highways, identified by Feldker as plain-

tiff's exhibit No. 21. However, Parker admitted on cross-examination that the county has never spent any money to improve any of that land for public road purposes and has not designated this land as a county public road, nor do any Stookey Township records show this to be a public road. He stated that Joe Seppi, who built the original structure on lot 24, used a roadway that was already there for access to his property and that Earl Jackson used the road for access to his property in Powder Mill Woods, located off of St. Andrews Drive.

August Feldker testified on his own behalf that he had developed what is now known as the Fairway Condominiums on lot 24 after purchasing this property from Mr. & Mrs. Joseph Seiper in December 1985. Feldker testified that he had been a resident of the Belleville area for 20 years and a member of St. Clair Country Club Golf Course, which borders the north edge of lot 24. He recalled that the access roadway to lot 24 was in substantially the same position as it had been when aerial photographs, identified as plaintiff's exhibits No. 15 and No. 16, were taken in the 1950's. When the condominiums were constructed, he asphalted this roadway. Feldker testified that he originally submitted an application for building permit for the condominiums showing the building facing south to 74th Street and asking for entrance to his property off 74th Street. This first application was denied, and he was required to turn the building around to face the extension of 74th Street and access the property from this roadway because the county authorities said access from 74th Street would have been too hazardous in the curved area.

Leonard Parrish testified on behalf of plaintiff that he lived in the house located on lot 24 from 1960 to 1969. He rented the house from Mrs. Patterson. He testified that he always got to his house from the drive off 74th Street. He chipped and oiled the roadway while he lived there and remembered the stone, section-corner marker located at the rear of the property and that the roadway was to the west of the stone. The roadway came straight north from 74th Street and angled toward the stone marker past the back of the house where his garage was located. He remembered that the old Schwinn house was located on property in section 11 just east of his property and on the other side of the private drive. No one lived in the house at this time but the three Schwinn sisters would stay at the house at night in order to keep vandals away. He recalled that the road went north behind the golf course to Powder Mill Woods and was called St. Andrews Drive. He once tried to stop Earl Jackson from using the road when he was building a house in Powder Mill Woods but was told by the sheriff to remove the barricade because it was a public road.

Doris Seiper testified on behalf of plaintiff that she and her husband purchased the house on lot 24 in October 1969 and sold it to Feldker in 1985. They used the roadway in question for access to their property and it was located to the west of the stone corner marker. The defendant, Ron Crook, purchased the farm property located next door to her property. She testified that they had many arguments with defendant after he purchased the land because he claimed that he owned the roadway. She admitted that there was always a sign along the roadway that read "private road." Defendant's exhibit No. 2 is a photograph showing a portion of plaintiff's condominiums, the roadway, and the "private road" sign.

Richard Weinel, registered by the State of Illinois as a land surveyor for nearly 40 years, testified on behalf of defendant that in 1957 he prepared a survey for the St. Clair Country Club and from his knowledge of county records there was a platted road along the section line between sections 11 and 12. He identified defendant's exhibit No. 3, a 1910 plat of the Ogle land, which showed a road 30 feet in width, 15 feet on either side of the section 11/12 line with a stone marking the corner between sections 11 and 12. Weinel identified as defendant's exhibit No. 4 page 123 of county surveyors' record book H, which was a survey prepared in 1887, as amended in 1895, for Fred Schwinn. He testified that this survey shows a county road running south along the east line of section 11, which is the west line of section 12, and located equidistant on each side of the dividing line. Next Mr. Weinel identified defendant's exhibit No. 5, page 27 from the 1901 standard atlas of St. Clair County, showing the road running along the line between sections 11 and 12. Weinel also identified as defendant's exhibit No. 6 page 32 of the Current and Historical Atlas of St. Clair County, compiled and published by John Hollman in 1936, showing the road running south along the section line. He opined that these atlas sheets conform to the county surveyors' record plat that shows the county road running south on each side of the section line. Mr. Moerchen had earlier identified this same exhibit as plaintiff's exhibit No. 18 but stated that, while it showed a public road that is now known as 74th Street originally extending up to the corner of sections 11 and 12, he could not tell from the plat whether the road was located as it is today or whether it straddled the section line. Weinel also identified the 1911 Kramer plat as defendant's exhibit No. 7, an official county record located at page 48 in plat book R, and pointed out the stone dividing sections 11 and 12 and a road running south from the stone, equidistant on both sides.

Weinel testified that he prepared a survey showing the boundaries

of the St. Clair Country Club property in 1981 and identified defendant's exhibit No. 8 as that survey. Defendant's exhibit No. 8 shows a 30-foot-wide public road as recorded in deed book 571, page 272, which bordered the north of lot 24; however, this road is no longer in use. He testified that sections 11 and 12 are shown on the Country Club survey with a stone marking their common corner with sections 1 and 2 immediately to the north. He showed a road on this survey running south from the stone marker which also marked the center line of the road, as well as the section 11/12 line. Weinel testified that he found no ordinance or resolution vacating that road running along the section 11/12 line. He also stated that, when he first traveled the road in 1956, it was a cinder roadway that came north from 74th Street past the Schwinn residence to the section corner, then angled off to the left to Earl Jackson's Powder Mill Woods' property, but he had no knowledge of whether the county ever maintained this section of road.

George Nold testified on behalf of defendant that he had been employed by Chicago Title for 45 years prior to his retirement seven years earlier. Nold prepared a report for defendant in 1987 with regard to the property between sections 11 and 12 in Stookey Township and that report was admitted into evidence as defendant's exhibit No. 9. He testified that the first evidence he found of a roadway in this area was in a 1908 survey by George Knobeloch and that the section 11/12 line ran south along the center of the roadway. He stated that the Kramer plat, recorded in 1911, also showed a portion of a roadway running south from the section 11/12 corner.

Nold's research indicated that the roadway now known as South 74th Street altered its direction at various times throughout the early years until it adopted its present course. The "74th Street" road meandered westerly through section 12 to the common corner of sections 11 and 12, then traveled southerly along the section line to the Old St. Louis Road highway. In 1911 the road was dedicated, as shown on defendant's exhibit No. 1, angling northwest across section 12 to the section corner and proceeding northwest as what is now the private St. Andrews Drive. This was the old public roadway shown on the E.C. Kramer subdivision plat and Mr. Weinel's Country Club plat. Nold stated that in 1922 there was a dedication of a 40-foot roadway, which is the present position of 74th Street, but that the short strip of roadway in question from the common corner of sections 11 and 12 continued to exist and connect with 74th Street. He also referenced Ogle Place Assessment Plat No. 1 recorded in 1943 as showing a public roadway straddling the section 11/12 line. The Ogle Place Assess-

ment Plats No. 2 and No. 3 did not show the roadway in question; however, he stated that the original owner of lot 24, Joseph Seppi, took deed to the property subject to the rights of the public in any and all legally established highways thereover, adjoining and adjacent thereto.

Nold recalled the existence and use of the old roadway and that it was common practice for county or farm roads to follow section lines, taking footage from both sides. He also recalled that when a tract in the southeast quarter of section 2, to be known as the Earl Jackson Assessment Plat, was recorded, the possibility of acquiring a tract to south, which was part of the "Schwinn farm," was explored in order to use the roadway in question for access to 74th Street. Nold concluded that the roadway along the section 11/12 dividing line had been established by prescription and usage. While Nold admitted that the subdivision plat recorded in 1950 for Country Club Heights showed the east edge of South 74th Street being the section 11/12 dividing line, he found that this was not inconsistent with the 300-foot strip of roadway being located north of South 74th Street on the section 11/12 line in plaintiff's exhibit No. 11.

Joseph Seppi testified on behalf of defendant that he purchased lot 24 in the early 1950's from the Ogle estate. He built a home and garage on the lot in 1952 and lived there approximately seven years. He then sold the property to the Pattersons. Seppi remembered the road going alongside his and the Schwinn property. He stated that he had to use the Schwinns' road, which was there when he bought the lot, to get in and out of his property. He stated that he got the Schwinns' permission to use the road when he started building the house. He stated that his property was bordered by the sassafras trees next to the roadway and that he wanted to preserve the vegetation. He stated that he occasionally placed a load of chat on the road in order to get to the driveway and that the road itself stayed substantially the same until it was sold to the Pattersons. He also remembered the "private drive" sign posted along the roadway as shown in defendant's exhibit No. 2 photograph. Seppi testified that the roadway extended straight to the back of his property down a hill and then turned about 30 degrees left in direction past the creek to the farm which Earl Jackson eventually bought.

Plaintiff's theory behind the roadway in question appears to be that the "extended" 74th Street at one time was a part of 74th Street and that, as it has shifted to the west such that the east edge of the road is the section 11/12 dividing line, so has the 300-foot strip to the west of lot 24. There seems to be no doubt among the expert

witnesses that a public roadway was established at one point in time along section 11/12 and that as platted the center line of the road was the section 11/12 dividing line. Plaintiff's argument and the conclusion reached by the trial court is that, although the early plats show the center of the road to be located on the section line, this road shifted over time 20 feet to the west of the section line and the testimony of all witnesses who had lived on this property is that the roadway was located to the west of the stone section corner marker. However, defendant's argument before this court is that the public road that did exist was located on the section line and that this road was abandoned. Defendant's expert, Mr. Nold, concluded that the existence of the road on recorded plats disappeared with Ogle's Assessment Plat No. 2, which was recorded prior to the conveyance to Joseph Seppi, lot 24's first resident. Defendant maintains that the roadway in question is a private drive located to the west of the section line on his property and that the evidence supported a finding by the court that this drive was used by plaintiff's predecessors in title only by the permission of the Schwinns, defendant's predecessor in title. Moreover, defendant claims that plaintiff admitted in his attorney's opening statement that the alleged roadway had never actually been used as a roadway except for access to the property, and this is consistent with the private driveway theory.

Under section 2—202 of the Illinois Highway Code (Ill. Rev. Stat. 1987, ch. 121, par. 2—202), a private road becomes a public highway, by prescription, if used by the public as a highway for 15 years. "Highways" include rights of way and may be called roads in a rural area or streets in a municipal area. (Ill. Rev. Stat. 1987, ch. 121, par. 2—202.) The requirements necessary to establish a public highway by prescription under the statute are the same as those necessary to establish a private easement by prescription. (*People ex rel. Carson v. Mateyka* (1978), 57 Ill. App. 3d 991, 997, 373 N.E.2d 471, 475.) The burden of proof is on the party claiming a prescriptive right to an easement. (*Castle v. Yenerich* (1981), 95 Ill. App. 3d 39, 45, 419 N.E.2d 677, 681.) The use by the public must be adverse, under a claim of right, continuous and uninterrupted, with the knowledge of the owner but without his consent. (*People ex rel. Kenney v. City of Goreville* (1987), 154 Ill. App. 3d 1091, 1097, 507 N.E.2d 1247, 1251.) A finding that a particular way is a public highway by prescription is a finding of fact that will not be reversed on appeal unless contrary to the manifest weight of the evidence. (*Mateyka,* 57 Ill. App. 3d at 998, 373 N.E.2d at 476.) The location of the limits of a public road is also a question of fact, to be determined from the evidence bearing upon

that question. *City of Highland Park v. Driscoll* (1962), 24 Ill. 2d 281, 283, 181 N.E.2d 93, 94.

■■ We believe that there was sufficient evidence in the record to support the finding of the court below that a public road by prescription was established and that the location of its centerline was the section 11/12 dividing line. This conclusion is supported by the location of a road along the dividing line on early plats and surveys, and maps contained in the historic atlas drawn from these early plats and surveys. Moreover, this conclusion is supported by evidence concerning the origin of 74th Street, a country road which meandered in a westerly direction through section 12 to the common corner of sections 11 and 12, then proceeded in a southerly direction *along the section 11/12 dividing line* until it reached the Old St. Louis Road. In 1911 a road in this approximate location was dedicated (defendant's exhibit No. 1) and continued from the stone marker dividing sections 11 and 12 to the northwest in the location of what is now St. Andrews Drive. This dedication plat shows the existence of the roadway south of the stone section corner marker and its continued use by the public would be logical to connect St. Andrews Drive with Old St. Louis Road. In 1922, 74th Street was dedicated in its present location south of lot 24. From this point forward the use, if any, of the roadway located along the section 11/12 dividing line would have been limited to those users of the farming property in sections 1, 2, 11 and 12, and use by the general public would have been discontinued.

■■■ The next step in our analysis involves whether, as plaintiff contends, the public road shifted its position 20 feet to the west such that the western boundary of the road was now located along the section 11/12 dividing line. The last official plat showing the roadway in question, Ogle's Place Assessment Plat No. 1 (plaintiff's exhibit No. 10), shows the roadway in question but shows its location straddling the section 11/12 dividing line. This plat was recorded in 1943. Thereafter only the section line is shown in this area.

All testimony, as well as the aerial photographs, indicates that the "drive" was in its present position, located entirely on defendant's property, after 1950. Moerchen's opinion that, if South 74th Street were extended north at the bend in the road south of lot 24, the extension would fall at the approximate location of the "roadway" in question is speculation and does not support a conclusion that the 300-foot strip of roadway shifted 20 feet to the west because it was still part of the public road that was once located along the section line. In point of fact, South 74th Street was relocated and widened such that its position was shifted 20 feet to the west of the section 11/12 divid-

ing line in 1954, well after all testimony indicated that the 300-foot strip of roadway was already in its position, 20 feet to the west of the section 11/12 dividing line. In our opinion the evidence does not support a conclusion that the roadway moved from its original position 20 feet to the west but does support a conclusion that the original roadway was abandoned.

Where a public highway has been established by public authority or by prescription or use, it remains such until vacated by public authorities or abandoned. (*Rosemont Building Supply, Inc. v. Illinois Highway Trust Authority* (1970), 45 Ill. 2d 243, 254, 258 N.E.2d 569, 575.) Mere nonuse is not sufficient to establish abandonment; rather, abandonment will be deemed where the public has ceased to travel a highway for a length of time sufficient to clearly indicate their acceptance of a new highway acquired with consent of the public authorities. (*Yaste v. Rust* (1988), 169 Ill. App. 3d 800, 803, 523 N.E.2d 1125, 1127.) As noted above, after 1922 with South 74th Street dedicated in its present location, the roadway along the section line would not have been used by the general public for access to Old St. Louis Road.

Plaintiff cites *Needham v. Village of Winthrop Harbor* (1928), 331 Ill. 523, 163 N.E. 468, in support of his contention that roads may meander from time to time and that over time the road along the section 11/12 dividing line meandered 20 feet to the west to its present location. In *Needham* the court stated that it was not necessary in order to establish a public highway by user that all vehicles traversing it follow the same route; if the user is over substantially the same strip, changes in the wheel ruts, necessitated by conditions of the road or the meeting of other vehicles, do not constitute a change of location for the road. (*Needham*, 331 Ill. at 532, 163 N.E. at 471.) However, in the instant case, the evidence indicates only that the user prior to 1922 was established along the section dividing line and that after 1922 that use by the general public was abandoned. In our opinion the evidence does not support a conclusion that the roadway continued to exist after 1950 but does support a conclusion that its centerline was relocated along a line parallel to, but 20 feet to the west of, the section 11/12 dividing line.

The testimony of those familiar with the road in question indicated that a road or drive was located in this area but that it was located to the west of the stone marking the section 11/12 corner. Moreover, the survey prepared by Mr. Moerchen in 1985 shows the existence of trees located along the section 11/12 dividing line at the edge of lot 24, and he opined that the trees were at least 30 years

old. Mr. Seppi, the first owner of lot 24, identified the aerial photograph of the house he built on this lot and the location of the trees which lie to the east of the drive. The evidence therefore supports only a conclusion that in 1950 trees were located along the centerline of the original roadway, again supporting the conclusion of abandonment.

The issue we next must determine is whether a public roadway was established by prescription in this 300-foot strip of "roadway," independently of the abandoned public road originally established along the section 11/12 dividing line. Where a roadway has been shown to have been openly and notoriously used by the public in a free and unrestricted manner for 15 years or more, it will be considered a public highway and the burden will be on the party who denies the existence of a public highway to show that the use was under some license or indulgence inconsistent with a claim of right by the public. (*Neely v. Coffey* (1980), 81 Ill. 2d 439, 443, 410 N.E.2d 839, 841-42.) The test is not the number of persons actually using it, but the character of the use—that is, whether or not the public, generally, had the free and unrestricted right to use the road. (*Van Amburg v. Reynolds* (1939), 372 Ill. 317, 322, 23 N.E.2d 694, 696.) However, where the first use of a roadway is over vacant and unoccupied land, the use is presumed to be permissive and not adverse, and mere permissive use can never ripen into a prescriptive right, whatever length of time such permissive use is enjoyed. (See *Monroe v. Shrake* (1941), 376 Ill. 253, 256, 33 N.E.2d 459, 461.) The question of whether a use is one which is adverse to the owner is one of fact to be determined by the trier of fact. *Burrows v. Dintlemann* (1976), 41 Ill. App. 3d 83, 86, 353 N.E.2d 708, 710.

Seppi testified that because he wanted to preserve the foliage located on the western edge of his lot, he sought permission of the Schwinn sisters, the owners of the property upon which the roadway was located, to use their "private drive." Evidence of a neighborly relationship between the parties gives rise to a rebuttable presumption that the land was used by the permission of the owner. (*Dintlemann*, 41 Ill. App. 3d at 85, 353 N.E.2d at 710.) Seppi, Parrish, and Seiper, plaintiff's predecessors in title, all testified to private use of the roadway as well as private maintenance of the road. The only use of the "roadway" other than by the residents of lot 24 and the Schwinn sisters, defendant's predecessor in title, was by Earl Jackson when he used the roadway to get to his property located off St. Andrews, a private drive. Where land is originally laid out and used as a private way for the use of adjoining landowners, its use by

the public as well does not necessarily make it a public highway where the owner keeps it up and the public use is not clearly hostile or under a claim of right. (*Swinford v. Roper* (1945), 389 Ill. 340, 344, 59 N.E.2d 863, 865.) Moreover, there was no record of any public maintenance of the roadway in question by the county highway department. Maintenance of a road by public authorities is a strong indication that the road is a public highway, and the converse of this proposition is no less compelling. *Zacny v. Sasyk* (1975), 30 Ill. App. 3d 93, 98, 332 N.E.2d 568, 573.

Given the above legal parameters and the evidence before this court, we must conclude that plaintiff did not meet his burden of proving that a public roadway was established by prescription along a line parallel to the section 11/12 dividing line but 20 feet to the west thereof. The weight of the evidence instead supports defendant's position that use of the roadway after 1950 was as a permissive easement at the license of defendant or his predecessors in title. Accordingly, we reverse the judgment of the circuit court of St. Clair County and remand the cause to enter judgment in favor of defendant consistent with the conclusions of this court.

Reversed and remanded.

CHAPMAN and HARRISON, JJ., concur.