NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 220163-U

NO. 4-22-0163

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 30, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| OWEN P. SULLIVAN, as Trustee of the Owen P. | ) | Appeal from the |
| Sullivan Revocable Living Trust Dated July 31, 2013, | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Macoupin County |
| v. | ) | No. 19CH81 |
| LINDA J. DURHAM, as Trustee under the Robert E. | ) | |
| Durham and Linda J. Durham Joint Declaration of Trust | ) | Honorable |
| Dated the 8th Day of March, 2017, | ) | April Troemper, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE BRIDGES delivered the judgment of the court.
Justices DeArmond and Harris concurred in the judgment.

**ORDER**

¶ 1 *Held*: It was not against the manifest weight of the evidence for the trial court to find that plaintiff had failed to prove that he was entitled to a prescriptive easement on defendant's land, and the trial court correspondingly did not err in denying plaintiff's request for a permanent injunction. Therefore, we affirm.

¶ 2 Plaintiff, Owen P. Sullivan, as Trustee of the Owen P. Sullivan Revocable Living Trust Dated July 31, 2013, appeals from the trial court's judgment in favor of defendant, Linda J. Durham, as Trustee under the Robert E. Durham and Linda J. Durham Joint Declaration of Trust Dated the 8th Day of March, 2017. The trial court ruled that plaintiff failed to show that he had a prescriptive easement on defendant's land, and it further denied plaintiff's request for a permanent injunction prohibiting defendant from interfering with plaintiff's use of the easement. We affirm.

¶ 3 I. BACKGROUND

¶ 4    Plaintiff filed a complaint against defendant on August 22, 2019, alleging that he owned land (Sullivan Tract) that bordered and was to the north of land owned by defendant (Durham Tract). Plaintiff sought a judgment that the Durham Tract contained a prescriptive easement (Durham Lane) for the benefit of the Sullivan Tract. Plaintiff alleged that without using Durham Lane, "access to Plaintiff's property [was] impossible because of mature trees and shrubs and a natural waterway/creek." Plaintiff also sought a permanent injunction against defendant prohibiting interference with plaintiff's use of the easement.

¶ 5    Defendant filed an answer, affirmative defense, and counterclaim on October 8, 2019. In the counterclaim, defendant sought to quiet title to another area of land, alleging that an "east-west fence line" was a boundary between her and plaintiff's properties.

¶ 6    Prior to trial, the parties submitted stipulated facts, which we summarize in relevant part. Jesse Ribble (1906-1990) acquired property (Ribble Tract) in 1948. Jesse had a brother, Jonas (1905-1971), a sister, Ruth Ellen (1900-1974), a son, George (1932-  )[1], and a daughter, Judy. Judy married Robert Durham. Jonas married Thelma Angelo (1907-1993), who had a sister named Julia Angelo (1916-2009). Ruth Ellen married John C. Rich (1887-1967).

¶ 7    The Ribble Tract was quitclaimed to Jesse Ribble in a deed dated December 18, 1948, and recorded on December 20, 1948. The Ribble Tract was quitclaimed to George and his wife in April 1991. In 2017, George and his wife sold a portion of the Ribble Tract, specifically the Sullivan Tract, to plaintiff.

¶ 8    The Durham Tract has continuously been owned by the Rich/Durham family since 1895. John G. Rich (1841-1916) had two sons, Jacob (1876-1942) and John C. (mentioned *supra* ¶ 6), and a daughter, Lydia. Jacob had a son named Frederick (1910-1993) who married

_____

[1]In this order, our use of Ribble refers to George Ribble.

Julia Angelo (mentioned *supra* ¶ 6). Julia had a son, Robert Durham (1941-2019), who was Frederick's stepson.

¶ 9        A warranty deed from Frederick and Julia Rich to Robert E. Durham and defendant was recorded on July 23, 1990.

¶ 10        No document recorded with the Macoupin County Recorder of Deeds gave any current or previous owner of the Ribble Tract an easement or right of access through the Durham Tract.

¶ 11        A bench trial took place on September 30, 2021. George Ribble provided the following testimony. His father acquired the Ribble Tract around 1950, when Ribble was about 18 years old.[2] They immediately began farming the land and had always accessed the land via Durham Lane. Ribble did not know if his father had an agreement with anyone to use the lane, and Ribble himself did not have an agreement. "[T]here wasn't any other way" to access the Ribble Tract. No one ever told Ribble that he could not use Durham Lane, and he did not have any conversations with defendant or her late husband about using the lane. Regarding his family, Julia Rich[3] was Thelma Angelo's sister. Julia worked at the post office with Jesse Ribble, who was the postmaster in Hettick. Frederick and Julia Rich lived in the house located along Durham Lane when Jesse bought the Ribble Tract. Jesse died in 1990, and Ribble took over as the owner of the Ribble Tract in 2010, after his mother passed away. Ribble sold part of the Ribble Tract (the Sullivan Tract) to plaintiff on June 29, 2017. Ribble had a tenant who farmed his property. The tenant used big equipment and entered from the west side, and not from Durham Lane.

---

[2]The parties stipulated that Jesse purchased the Ribble Tract in 1948, when Ribble would have been 16 years old.

[3]In the stipulated facts, Julia Rich was referred to as Julia Angelo.

¶ 12            Defendant provided the following testimony. Her property, which she and her husband Robert Durham acquired in 1990, was adjacent to the Ribble Tract. She was aware that Ribble and his father had used Durham Lane to get to the Ribble Tract since the late 1940s or early 1950s. She had not had any conversations with Ribble or Jesse about permission to use the lane, and she was not aware that her husband had such a conversation. Defendant had conversations with her in-laws, Frederick and Julia Rich, that the Ribble family had permission to use the lane due to family ties between the Ribble family and the Rich family. From conversations of the Rich family, defendant knew that the Ribbles were given permission in the 1940s, when the Ribble's property was purchased, to go down Durham Lane to farm the Ribble Tract. Defendant agreed that when she was asked in her deposition whether Ribble had ever asked for permission to use Durham Lane, she responded, "Not to my knowledge, but that was nothing my in-laws ever discussed either. I mean they could have had an agreement. Fred and Julia could have had an agreement with Jesse and Amelia. That was before me."

¶ 13            Defendant testified that her late husband had previously been married to Ribble's sister Judy, and that marriage ended in 1965 or 1966. Robert Durham passed away in 2019.

¶ 14            Plaintiff testified as follows. He purchased the Sullivan Tract from Ribble by deed recorded on February 29, 2017. At the time of the purchase, his understanding was that Ribble accessed the land via Durham Lane, and plaintiff then also accessed the Sullivan Tract by that same path. On October 12, 2018, plaintiff called the Illinois Conservation Police regarding defendant's grandchildren because they were on his property.[4] When plaintiff talked to defendant

---

[4]It appears from the exhibits admitted into evidence that plaintiff filed trespassing charges against defendant's grandchildren.

that night, he just wanted an apology and assurance that they would not trespass on his land again, but defendant was "very sharp" and condescending and said that plaintiff could no longer use Durham Lane. About two or three weeks later, the Illinois Conservation Police approached him when he was on the Durham Tract.[5] Plaintiff did not have any way to access the Sullivan Tract other than Durham Lane; he currently had permission of a neighbor to walk across their land to get to the Sullivan Tract, but the neighbor could revoke permission at any time. Plaintiff admitted that he owned the adjoining property to the Sullivan Tract, and that his adjoining property had public access. However, it would require him to "walk through 70 acres of woods and forge [*sic*] a creek."

¶ 15　　　　　Brett Arnett testified that Warren Cole used to farm the Ribble Tract and the Durham Tract. After Cole retired, Arnett took over as the tenant farmer for both families. He farmed the Ribble's property either by crossing the Durham Tract or through an entrance on the northwest corner of Ribble's property. The latter entrance required him to cross plaintiff's property to get to Ribble's farm.

¶ 16　　　　　The trial court entered an order on January 28, 2022; we summarize its findings. "Plaintiff satisfied several elements to establish a prescriptive easement but did not clearly and distinctly convince the trier of fact that the origins of the use of this strip of land were unknown."

---

[5]Exhibits in evidence indicate that on October 31, 2018, defendant called the Illinois Conservation Police to report plaintiff trespassing on her property. Plaintiff alleged in his complaint that "he was charged with hunting without permission and trespass to land, even though he was simply using the historical access point to access his property where he frequently hunt[ed]."

Before 1948, the Ribble Tract was part of a larger parcel of land owned by G.W. Rives, as shown on a 1911 plat map admitted into evidence. The Rives's parcel had public access on the west, north, and east sides. The trial court discussed the history of the Ribble Tract and the Ribble and Rich/Durham family members. The Ribble and Rich/Durham families had the same tenant farming both families' land over time. Access to the Ribble Tract from Durham Lane had not changed since 1948. Although Ribble and plaintiff both testified that they never asked defendant or her late husband for permission to use Durham Lane, that alone did not establish adversity or hostility, especially considering the special relationship that existed between the landowners and families since 1948.

> "To summarize, the owners Fred and Julia Rich lived on the lane with their son, Robert Durham. Julia worked for Jesse Ribble in the Hettick post office, and Julia's sister Thelma was married to Jesse's brother, Jonas. In addition, Jesse's sister Ruth Ellen had married into the Rich family, namely to John Rich. Stated differently, for a period of time, Jesse's son, George Ribble, and Robert Durham (Defendant's husband) were brothers-in-law; George's aunt was married to a Rich; and George's uncle's sister-in-law was a Rich."

Given all of the close family and personal connections, and the physical location of the Rich home next to Durham Lane, it was extremely unlikely that Jesse would have blatantly asserted a right to use Durham Lane. "It [was] much more likely, and in fact highly probable, that a permissive accommodation was reached to allow Jesse to use the Durham Lane to access his newly acquired property." Further, the "permissive use has continued unabated without any intervening events which would have triggered the commencement of a twenty-year period of adversity," and the "permissive use remains terminable at the will of Defendant."

¶ 17 The trial court therefore denied plaintiff's request for a declaration that a prescriptive easement existed on Durham Lane, and it correspondingly denied his request for a permanent injunction. However, the trial court granted defendant's counterclaim to quiet title.

¶ 18 Plaintiff timely appealed.

¶ 19 II. ANALYSIS

¶ 20 On appeal, plaintiff challenges the trial court's denial of his claims but not its grant of defendant's counterclaim. Accordingly, we address only plaintiff's arguments relating to his complaint.

¶ 21 An easement is a nonpossessory interest that gives a party a right to enter and use another's land. *Nationwide Financial, LP v. Pobuda*, 2014 IL 116717, ¶ 28. A party seeking to establish an easement by prescription must prove that the use of the land was adverse, exclusive, continuous, uninterrupted, and under a claim of right. *Mazal v. Arias*, 2019 IL App (1st) 190660, ¶ 20. These elements must have been present for at least 20 consecutive years. 735 ILCS 5/13-101 (West 2020); *Mazal*, 2019 IL App (1st) 190660, ¶ 20. The burden of proving a prescriptive right is on the party alleging such a right, and each element must be distinctly and clearly proven. *Rainbow Council Boy Scouts of America v. Holm*, 2018 IL App (3d) 160715, ¶ 10.

¶ 22 The elements of adversity and claim of right for a prescriptive easement are synonymous and refer to use that is not subordinate to the owner's title. *Nationwide Financial, LP*, 2014 IL 116717, ¶ 43. "Mere permission to use land cannot ripen into a prescriptive right, no matter how long the permissive use is enjoyed." *Id.* Whether a party has established an easement by prescription is a question of fact, and we will not disturb the trial court's finding unless it is against the manifest weight of the evidence. *Rainbow Council Boy Scouts of America*, 2018 IL

- 7 -

App (3d) 160715, ¶ 10. A finding is against the manifest weight of the evidence only where the opposite conclusion is clearly evident or the finding is unreasonable, arbitrary, or not based on the evidence presented. *Schroeder v. Post*, 2019 IL App (3d) 180040, ¶ 13.

¶ 23 Plaintiff argues that the trial court found against him on the element of adversity, ruling that the use of Durham Lane by Jesse was permissive and that nothing had happened to transform the use of the lane from one of permission to one of adversity. Plaintiff asserts that the flaw in the trial court's logic touches upon a presumption that applies when the origin of the path in question has not been shown. Plaintiff cites *Nationwide Financial, LP*, 2014 IL 116717, ¶ 28, where our supreme court stated:

> "[I]t is well settled that '[w]here a way has been used openly, uninterruptedly, continuously and exclusively for more than a period of twenty years, the origin of the way not being shown, there is a presumption of a right or grant from the long acquiescence of the party upon whose land the way is located.' " *Id.* (quoting *Rush v. Collins*, 366 Ill. 307, 315 (1937)).

The court stated that the "law favors this conclusion because it is reasonable to assume that the owner would not have acquiesced to the use for so long when it was in his interest to have interrupted it, unless he felt that the party using it had a right that could not be defeated." *Id.* ¶ 39.

¶ 24 In *Nationwide Financial, LP,* the last eyewitness of the use of the path at issue testified that the path was already established when she bought her property, that it was the only way to access her property, that she never discussed permission to travel the path with anyone, and that the previous owners did not inform her that permission was required to travel on the path. *Id.* ¶ 46. The supreme court stated that one could speculate that the original owners of the

servient estate provided permission to the original owner of the dominant estate, or that the original owners agreed to an easement. The court stated that, however, neither of these scenarios had been shown, and "[g]iven the absence of evidence that the origin of the way was merely permissive, the presumption is that of a right or grant based on the long acquiescence of the owners on whose land the way is located." *Id.* ¶ 47.

¶ 25        Plaintiff argues that this case is analogous to *Nationwide Financial, LP*, in that it is undisputed that Ribble and his father began using Durham Lane to access the Ribble Tract shortly after its purchase in 1948. Plaintiff maintains that nothing in the record indicates that the use of Durham Lane to access the Ribble Tract began with Jesse, but rather evidence suggests that it began prior. He cites exhibits showing that the Ribble Tract was once part of a large tract of land owned by G.W. Rives that had public access on the west, north, and east. In 1941, the Ribble Tract had been removed from the larger tract and transferred to John Rives. Plaintiff argues that it would have made little sense for John Rives to obtain a parcel with no public access except Durham Lane unless he planned to use the lane. Plaintiff maintains that nothing in the record indicates that Durham Lane was not being used as an access point to the Ribble Tract before 1948, such that neither party established at trial the origin of the use of Durham Lane to access the Ribble Tract.

¶ 26        Plaintiff continues that, therefore, because the origins of the use of the lane as an access point for the Ribble Tract was unknown, the open, exclusive, and continuous use of the lane by Ribble to access the Ribble Tract created a presumption that Ribble's use was adverse and under a claim of right. Plaintiff argues that nothing in the record supports the trial court's finding that the use of the lane arose out of a permissive accommodation between Frederick and Julia Rich and Jesse Ribble, as nothing suggests that the lane was not in use prior to Jesse's

purchase of the Ribble Tract. Plaintiff argues that it is more likely that John Rives and any other subsequent owner of the Ribble Tract used Durham Lane. Plaintiff reasserts that, in the end, the origin of the lane as a point of ingress and egress for the Ribble Tract is unknown.

¶ 27 Plaintiff argues that defendant's evidence was insufficient to overcome the presumption of the adverse use of Durham Lane. Plaintiff asserts that the only evidence defendant presented to support the theory that the use of Durham Lane by members of the Ribble family was permissive was defendant's testimony that her in-laws, Frederick and Julia Rich, had made statements about Jesse having such permission based on connections between the Rich and Ribble families. Plaintiff argues that defendant's deposition testimony contradicts this assertion, as she testified in the deposition that her in-laws never discussed whether Ribble had asked for permission to use the lane. He also points out that when asked during the deposition if Ribble had "a continuing right to use that lane for farming purposes," defendant responded, "Yes. He can continue to use that for farming purposes."

¶ 28 Plaintiff contends that the only reasonable conclusion to draw from the evidence is that the origin of the use of Durham Lane to access the Ribble Tract was not shown and is unknown, and with the presumption that the use was not permissive and that it was open, uninterrupted, continuous, and exclusive for more than 20 years, it is necessary to conclude that Ribble's use of the lane created a prescriptive easement that now benefits the Sullivan Tract.

¶ 29 Defendant argues that the trial court's ruling is entirely consistent with and further mandated by the manifest weight of the evidence. Defendant cites *Roller v. Logan Landfill, Inc.*, 16 Ill. App. 3d 1046, 1052 (1974), where this court stated, "The evidence usually resorted to in order to establish the permissive nature of a use is a written or oral license; however, the permission may be inferred from the neighborly relationship of the parties or from other

circumstances attending the use." Defendant argues that there is a wealth of evidence here that shows that access to the Ribble Tract before 1948 would not have been through the Durham Tract. Among the evidence that defendant highlights is that before 1948, the Ribble Tract was part of a larger tract owned by G.W. Rives that had public access on the west, north, and east sides; by 1941, the Ribble Tract had been separated out of the larger tract and transferred to John Rives; and there are no recorded easements giving a right of access through the Durham Tract to the Ribble Tract. Citing *Evanik v. Janus*, 120 Ill. App. 3d 475, 487-88 (1983), defendant argues that under long-established caselaw noted by the trial court, when a parcel is severed from the parent tract and has no public access, an easement over the remaining lands of the grantor is implied. Defendant argues that here, public access from the parent tract would have been available to the west, north, and east of the Ribble Tract, but not to the south through the Durham Tract. Defendant maintains that this conclusion is further buttressed by Ribble's testimony that his tenant farmer also accessed the Ribble Tract from the west. Defendant argues that there is no evidence that the Rives family ever accessed any part of their property through the Durham Tract or that John Rives had any contact with or relationship to the Rich/Durham family. According to defendant, it is almost certain that John Rives was a member of the G.W. Rives family and that when he acquired title to the Ribble Tract, he would have accessed the property through other family ground, versus a stranger to the south.

¶ 30        We conclude that the trial court's finding, that plaintiff had failed to distinctly and clearly prove that use of Durham Lane was adverse rather than permissive, was not against the manifest weight of the evidence. It is undisputed that the Ribble Tract was part of a larger parcel of land owned by G.W. Rives that had public access on the west, north, and east sides, as shown on a 1911 plat map. The Ribble Tract had been carved out by 1941 and transferred to John Rives,

who most likely was related to G.W. Rives. Per the parties' stipulation, the Durham Tract had been in the Rich/Durham family since 1895, so it long predated the transfer to John Rives. Though plaintiff argues that John Rives would not have obtained a parcel without public access except Durham Lane unless he planned to use the lane, we agree with defendant that John Rives presumably would have traveled over family land to access one of the roads on the west, north, and east sides of the original tract, especially considering the implied easement that would have been created on the original tract. See *Evanik*, 120 Ill. App. 3d at 475. Therefore, the trial court's finding that use of Durham Lane to access the Ribble Tract began with Jesse was not against the manifest weight of the evidence.

¶ 31     It was similarly not against the manifest weight of the evidence for the trial court to find that given all of the close family ties and personal connections between the Rich and Ribble families, it was very unlikely that Jesse would have asserted a claim of right to cross Durham Lane, but rather that it was much more likely that a permissive accommodation was reached to allow Jesse to use Durham Lane to access the Ribble Tract. In this manner, the trial court found that the origin of the way was not unknown, the contrary of which plaintiff had the burden to show. See *Rush*, 366 Ill. at 315 ("The facts to admit *** such presumption [that the origin of the way was not shown], however, are not presumed but must be established by the greater weight of the evidence."). We note that the trial court relied on the stipulated family connections in reaching its conclusion, and not defendant's trial testimony that she had discussions with her in-laws about the use of Durham Lane, which plaintiff repeatedly asserts was contradicted by defendant's deposition testimony. In sum, the trial court's finding that plaintiff had failed to prove an easement by prescription was not against the manifest weight of

the evidence. Correspondingly, plaintiff's challenge to the trial court's denial of his request for a permanent injunction also fails.

¶ 32                                      III. CONCLUSION

¶ 33            For the reasons stated, we affirm the judgment of the circuit court of Macoupin County.

¶ 34            Affirmed.